UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
                                 :

ELLEN LIBMAN RONIS, as Executrix of  :
the Estate of Michael Ronis, Deceased,  :
                                 :       10 Civ. 3355 (TPG)

              Plaintiff,  :

                                 :        **OPINION**

       – against –  :

CARMINE'S BROADWAY FEAST, INC.,  :
LITTLE FISH CORP., TIMES SQUARE  :
BARBEQUE, INC., and CARMINE'S  :
ATLANTIC CITY, LLC,  :
                                 :

             Defendants.  :
---------------------------------------------x

       Plaintiff in this case is Ellen Ronis, the widow and executrix of the estate of Michael Ronis, a chef and founder of restaurants which operate as "Carmine's" and "Virgil's."  At the death of Michael Ronis, his interest in certain restaurants was to be redeemed.  Loan debts were to be closed out.  The estate did in fact receive payments relating to these obligations.  Plaintiff, as executrix, brings this action alleging that the payments were inadequate.  Defendants have answered, denying liability and asserting certain affirmative defenses and counterclaims.

       Plaintiff moves for partial summary judgment.  She seeks summary judgment on all phases of the case, except a set-off asserted by defendants relating to an alleged indebtedness of Michael Ronis in the amount of $105,000.  Defendants oppose plaintiff's motion and cross-move for partial summary judgment on the $105,000 debt issue.

There is also a motion to intervene in the case by one Gary Croland.

The court denies the motion for partial summary judgment by both sides except that the court rules that the first three affirmative defenses are invalid.  The motion by Gary Croland to intervene is granted.

## BACKGROUND

The following facts are undisputed except where otherwise indicated.

Michael Ronis was a chef and founder of restaurants which operate as Carmine's and Virgil's.  Defendants Broadway Feast, Little Fish, and Times Square are New York corporations that operate Carmine's and Virgil's in New York, New York.  Atlantic City is a New Jersey limited liability company that operates Carmine's in Atlantic City, New Jersey.

<u>The Agreements</u>

On February 22, 2007, Michael Ronis and the shareholders of Broadway Feast, Little Fish, and Times Square entered into three virtually identical Shareholder Agreements (the "Corporate Agreements"). Section 3.03(a) of the Corporate Agreements gives the corporate defendants the right to redeem the shares of any deceased shareholder other than Cutler.  Section 3.05(a) states that the purchase price for shares to be redeemed is to be "an amount equal to the amount calculated using the formula set forth in" Section 3.05(b).

Section 3.05(b) states that the purchase price will be the pro rata share of the valuation of each corporation calculated by a multiple of "the average of earnings before interest, taxes, depreciation, and amortization ('EBITDA')" of each corporation for the previous three years.  The EBITDA is to be adjusted downward "for management and administrative fees, not to exceed six (6%) percent of net sales, and adjusted upward for distributions."

Section 3.05(c) states that the value of the corporations and the EBITDA calculations are to be determined by "the certified public accountant regularly retained" by the corporations "on a basis consistent with past practices and accounting principles."  In addition, this provision states that, absent "manifest error," the accountant's determination is to be "final, binding, and conclusive on the parties."

In addition, the Corporate Agreements contain a "no-waiver" provision in Section 7.02, which states that any "waiver by a party of a breach of any provisions of this Agreement shall not be deemed to be a waiver of any preceding or subsequent breach of the same or any other provision."

Further, the Corporate Agreements discuss loans made by a deceased shareholder.  Section 3.06(f) states that "any loans owed to the deceased" shareholders are to be repaid on the same terms as the purchase price for outstanding shares.

In July 2006, Michael Ronis entered into an Operating Agreement with Atlantic City (the "Atlantic City Agreement").  Section 6.4 of the Atlantic City Agreement provides that Atlantic City has the right to redeem the interest of a deceased member.  The Atlantic City Agreement is different from the Corporate Agreements in that it provides for computation of the redemption price on the basis of a two-year average of EBITDA, rather than a three-year average, and it contains no provision for adjustments.

Communications After Michael Ronis's Death

Michael Ronis died on October 29, 2009.  The Connecticut Court of Probate appointed his widow, Ellen Ronis, as executrix on February 2, 2010.

At the time of Michael Ronis's death, the four defendants were under the common control and ownership of Alice Cutler, who is the principal executive officer of each of the corporate defendants and the managing member of Atlantic City.  At this time, Cutler owned more than 70% of the issued and outstanding shares of common stock in each of the three corporate defendants.  Michael Ronis owned 15.38% of Broadway Feast, 26.6% of Little Fish, 20% of Times Square, and 13.47% of Atlantic City.

On November 16, 2009, defendants' accountant, Roy S. Tumpowsky of Joel Popkin & Company, P.C., submitted three letters to Cutler, including: (1) a letter setting forth calculations of the amounts he

computed to be due for the redemptions of Michael Ronis's interests in the four defendants; (2) a letter with a computation of amounts due to Cutler under a November 26, 2002 promissory note relating to Michael Ronis's purchase of additional shares in Little Fish (the "Little Fish Note"); and (3) a letter with a summary asserting that $227,213.62 was due from Michael Ronis under three undocumented loan agreements. Defendants assert that Cutler made these three undocumented loans to Michael Ronis in 1994, 1998, and 1999 and that she subsequently assigned them, along with the Little Fish Note, to Little Fish.

Defendants exercised their rights to redeem the Ronis interests in a letter dated November 19, 2009.  An exhibit attached to this letter stated that, by defendants' calculation, the aggregate value of Michael Ronis's interests was $6,112,383  In this letter, defendants asserted that the $227,213.62 due under the three undocumented loan agreements was an offset to the redemption valuations.

Subsequently, plaintiff, through her attorney, objected to the $6,112,383 as being too low.  The issue related to what was to be included in the downward adjustment for management and administrative fees.  This was important, because such adjustment was not to exceed 6% of net sales.  Plaintiff relied on the audited financial statements of the companies, which had specific items for "Management and administrative fees," as items in the income statements.  Plaintiff claimed that the use of these figures would increase the redemption

value of Broadway Feast, Little Fish, and Times Square by $1,785,951. The attorney for the companies replied to the effect that the accountant doing the calculations did not use the figures for management and administrative fees from the financial statements but used the "actual" amount of those fees. The attorney contended that the line item in the financial statements included salaries and bonuses, and the consulting fee to someone named Polistina, and that these amounts needed to be "stripped out for the valuation calculation."

In addition, on April 29, 2010, Atlantic City tendered a check to plaintiff's counsel for $126,105. Counsel rejected this check. Plaintiff contends that certain consulting fees were erroneously used in the calculation, thus improperly reducing the value.

On April 21, 2010, plaintiff commenced the present action seeking to recover the higher level of redemptions. The principal ground plaintiff asserts for this claim is what has been described. Defendants deny liability. Among the affirmative defenses asserted are theories of estoppel and waiver.

A cross-motion has been filed as summarized earlier in this opinion. There is also the motion to intervene by Croland.

### DISCUSSION

There are issues of fact which stand in the way of summary judgment in favor of plaintiff. To be sure, her theory is supported by certain audited financial statements. However, defendants raise an issue

about whether the accountant was in fact justified in using another method of analysis and calculation.  A voluminous record has been submitted to the court in connection with these motions, but this record only reinforces the view of the court that there are factual issues which cannot be resolved by summary judgment.  What has been said relates to plaintiffs' request for summary judgment about the calculation of the amounts for redemption.

Plaintiff also moves for summary judgment dismissing certain affirmative defenses.  The court will consider her motion as it regards three of these—that plaintiffs' claims are barred (1) by Michael Ronis's conduct, (2) by the doctrine of estoppel, and (3) by the doctrine of waiver.

Defendants' first three affirmative defenses share common factual allegations—namely, that Michael Ronis was intimately involved with reviewing and approving the corporate defendants' calculations of redemption prices for other shareholders who were bought out in April and December 2008.  Consequently, they argue that plaintiff's breach of contract claims concerning the corporate defendants' proposed redemption of Michael Ronis's shares are barred by his conduct and the doctrines of waiver and estoppel.  The argument about conduct is essentially an argument about waiver.

Plaintiff contends that these three affirmative defenses should be dismissed, because Section 7.02 of the Corporate Agreements contains a "no-waiver" provision which prohibits defendants from asserting them.

Specifically, Section 7.02 states that any "waiver by a party of a breach of any provisions of this Agreement shall not be deemed to be a waiver of any preceding or subsequent breach of the same or any other provision." Plaintiff also argues that defendants' estoppel defense fails, because defendants do not allege that they relied on Michael Ronis's alleged conduct.  Defendants do not respond to plaintiff's arguments in their briefs.

Under New York law, waiver is "the voluntary and intentional abandonment of a known right."  Town of Hempstead v. Incorporated Vill. of Freeport, 790 N.Y.S.2d 518, 520 (2d Dep't 2005).  Nevertheless, by including a "no-waiver" provision in their contract, parties may limit the effect of a waiver of contractual rights through a course of conduct inconsistent with the contract's terms.  Norwest Fin., Inc. v. Fernandez, 86 F. Supp. 2d 212, 230 (S.D.N.Y. 2000).  Here, Section 7.02 of the Corporate Agreements contains such a "no-waiver" clause.

To establish estoppel, a party must prove that it relied upon another party's actions, its reliance was justifiable, and that, as a result of such reliance, it prejudicially changed its position.  Town of Hempstead, 790 N.Y.S.2d at 520.  Here, defendants do not allege that they relied on Mr. Ronis's conduct concerning prior redemptions.  The court finds that the three affirmative defenses are invalid as a matter of law, and they are dismissed.

Defendants assert that they are entitled to certain setoffs.  The first relates to an amount of $105,000, which Michael Ronis borrowed in 2002.  Defendants also assert that there were three undocumented loans made by Cutler to Michael Ronis, which she subsequently assigned to Little Fish.  It is alleged that these three loans amounted to a total of $227,213.62.

There is a defense motion for summary judgment to recover on the $105,000 loan.  Plaintiff moves for summary judgment dismissing the claims about the three undocumented loans.

As to the $105,000 loan, it would appear clear that there is a valid debt for the principal amount.  However, there is a substantial dispute about interest.  Therefore, the issues about this loan cannot be completely resolved on the present record.

As to the three undocumented loans, there are issues which cannot be resolved on summary judgment.

**CONCLUSION**

The court denies the parties' motions for partial summary judgment except that the court rules that the first three affirmative defenses are invalid.  The motion by Gary Croland to intervene is granted.

This opinion resolves document numbers 13, 19, 20, 23, and 25 on the docket.


Dated:  New York, New York
        September 26, 2011

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9|26|11