UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------x
                                           :
ELLEN LIBMAN RONIS, as Executrix of
the Estate of Michael Ronis, Deceased,     :

                          Plaintiff,       :

          – against –                      :

CARMINE'S BROADWAY FEAST, INC.,            :
LITTLE FISH CORP., TIMES SQUARE
BARBEQUE, INC., and CARMINE'S              :
ATLANTIC CITY, LLC,
                                           :
                          Defendants.
-------------------------------------------x


GARY CROLAND,                              :

                  Intervening             :
              Counterclaim Plaintiff
              and Cross-Claimant,          :

          – against –                      :

ELLEN LIBMAN RONIS, as Executrix of        :
the Estate of Michael Ronis, Deceased,
                                           :
                  Counter-Defendant
                                           :
          and
                                           :
CARMINE'S BROADWAY FEAST, INC.,            :
LITTLE FISH CORP., TIMES SQUARE
BARBEQUE, INC., and CARMINE'S              :
ATLANTIC CITY, LLC,
                                           :
                  Counter-Defendants.
-------------------------------------------x

10 Civ. 3355 (TPG)

**<u>OPINION</u>**

Plaintiff Ellen Ronis, the widow of Michael Ronis ("Ronis") and executrix

of his estate, brings this diversity action against various corporate defendants that allegedly breached agreements governing the redemption of Ronis' stock upon his death.

Gary Croland ("Croland") moved to intervene in the action, and on September 26, 2011, his motion was granted. The gravamen of Croland's complaint in intervention is that he financed Ronis' equity stake in three of the corporate defendants—Little Fish Corp. ("LF"), Times Square Barbeque, Inc. ("TSB"), and Carmine's Atlantic City, LLC ("CAC")—in exchange for repayment of the fronted money and a percentage of any and all non-salary revenue that Ronis received from the companies. Croland alleges that his agreements with Ronis entitle him to a share of the redemption proceeds due Ronis' estate. He also alleges that Ronis failed to pay him his proper share of dividend distributions over the years.

Plaintiff now moves against Croland for summary judgment under Fed R. Civ. P. 56 and judgment on the pleadings under Fed. R. Civ. P. 12(c). Plaintiff also moves, pursuant to Fed. R. Civ. P. 37(c)(2), for costs incurred in the effort to prove the truth of matters that Croland failed to admit as requested. Croland cross-moves for summary judgment and, in the alternative, for leave to file an amended complaint asserting an additional count.

Plaintiff's motion for summary judgment is granted, but her motion for costs is denied. Croland's motion for summary judgment is denied, and his motion for leave to amend the complaint is granted.

2

**Facts**

The following facts are not in dispute unless otherwise stated.

Ronis was a chef of considerable ambition. In 1992, he needed money to buy an equity stake in LF, a company founded to own a restaurant called Carmine's on 44th St. in Manhattan. Ronis approached Croland, an insurance broker with whom he was acquainted, for financing. Croland provided him with $125,000, and the parties partially memorialized their agreement in two promissory notes signed by Ronis. These notes, however, concern only the repayment of the sums advanced by Croland. They make no mention of any further obligation on the part of Ronis, nor do they purport to be the sole records of the agreement between Ronis and Croland.

It is apparent that the parties agreed to additional terms. Ronis and others (not including Croland) owned stock in LF. It appears from Ronis' emails and actions that he agreed to give Croland a percentage of the distributions he received from LF. Croland's share was to equal two percent of the <u>total distributions</u> issued by LF to Ronis and the other stockholders. It appears that Ronis formed a company called Kreative Foods, Inc. ("Kreative"), and that the distributions made by LF for Ronis were made to Kreative and then passed by Kreative to Ronis. The payments to Croland were then made by Ronis. Ronis paid off the $125,000 debt with interest. From 1994 to 2009, Ronis paid Croland an additional $500,758 pursuant to the agreement just described.

In 2004, Croland made a $60,000 contribution towards the expansion of Carmine's. This payment took the form of $20,000 dollars in cash and

forgiveness of a $40,000 debt that Ronis owed Croland. According to the document memorializing this transaction, this contribution was made "so that my interest in Carmine's 44th Street remains at 2%." Although it might appear from this document that Croland owned a direct stake in LF, Ronis repeatedly avers that Croland is not actually a shareholder: "Our deal is based on dividends I receive not ownership of stock." (Croland Aff. Ex. J). Thus it seems that the two percent figure merely expresses Croland's interest <u>in Ronis' distributions</u> in terms of the entirety of LF distributions.

In 1993, Ronis approached Croland for money buy a stake in a different company—TSB, which owns a restaurant called Virgil's Barbeque in Times Square. Croland gave him $110,000. Once again, the transaction was memorialized in a promissory note concerning only the repayment of the sum advanced. But once again, the documentary record establishes that Ronis additionally agreed to give Croland a percentage of his distributions from TSB. In this instance, Croland calculates that he was to receive 11.07% of Ronis' distributions from TSB, as distinct from the total distributions to all shareholders. By virtue of this agreement, Ronis made recurring payments to Croland that together far exceeded the amount due under the promissory note. All told, Croland received $259,911 in addition to the repayment of the original loan with interest.

In 2004, Ronis tapped Croland for money for CAC, which was formed to own a Carmine's location in Atlantic City. This time, their transaction was partially memorialized in an October 2004 letter from Ronis to Croland. The

4

letter appeared to contemplate an arrangement similar to the prior ones between Croland and Ronis. Namely, Croland was to receive a percentage of Ronis' distributions expressed in terms of the overall distributions from CAC. In the words of the letter (Pl. Ex. 4):

> This letter shall acknowledge your non-refundable payment to Kreative Foods, Inc., in the amount of Seventy-Five Thousand ($75,000.00) Dollars to be used for our start-up costs for a new restaurant venture known as Carmine's Atlantic City, LLC, located at the Tropicana Hotel in Atlantic City, New Jersey.

> In return for your advance, we agree to pay you 1.66 percent of the net cash distributions of operating profit actually received by Kreative Foods, Inc., from Carmine's Atlantic City, LLC, within (30) days of receipt of same. Our understanding regarding this matter contemplates the distribution of the foregoing percentage profits actually received by us and does not contemplate any ownership interest in the business by you or responsibility by you for losses, if any, incurred as a result of business operations.

Croland took issue with this characterization of their agreement. Indeed, on the bottom of this very letter, he penned the following comments: "Sorry to continue to bother you with this—but the agreement still does not include profit from sale of store and return of capital from same. It has been 16 months since I raised this problem and would appreciate having it taken care of." On November 27, 2007, Croland sent Ronis a letter to reflect his interpretation of their agreement, which stated (Croland Aff. Ex. I-2)[1]:

> Please sign the following to reflect our agreement for Carmine's Atlantic City, LLC, and return a copy to me.

> Gary Croland has paid $75,000 for a 1.66% interest in Carmine's Atlantic, LLC. This interest is to include any and all

---

[1] Croland accidentally created two exhibits labeled I-2 in his affidavit. The court refers to the latter of the two.

distributions made to shareholders. Michael Ronis and/or Kreative Foods, Inc. agrees to pay Gary Croland any and all distributions made to shareholders within 30 days of receipt. Gary Croland does not own shares in Carmine's Atlantic City, LLC, and is not entitled to vote.

Additionally, in the event Carmine's Atlantic City is sold payment of 1.66% is also to be made.

Ronis did not sign this agreement. However, on July 7, 2006, he sent an email concerning cash flow issues that had apparently led to underpayments to Croland. In the course of this email, he stated the following about the nature of his agreements with Croland (Croland Aff. Ex. J). Read in context, the statement appears to apply to all of the various agreements between Croland and Ronis:

Our deal has always been when I receive dividends from any of our store's [sic] it is then passed on to you once it comes to me. There is no equity involved except if the place is sold you would receive your fair share of my portion not of the companies.

Ronis also made similar statements in specific reference to the CAC agreement. On February 1, 2006, Ronis sent an email in which he stated (Id.):

The way I read it [the October letter about the CAC agreement], it does state that: 'Agree to pay you 1.66% of the net cash Distributions of operating Profit.' This is the only vehicle we have—it's just that—this is the same as I have with the company. It is definitely spelled out. The same holds true if it is sold- [*sic*]

Under the agreements among the shareholders of the companies (including Ronis but not including Croland), there were provisions about payment to the estate of a deceased shareholder to compensate for the interest of the deceased. Those provisions, in fact, are the subject of the main action before the court.

As to Croland's position in the event of Ronis' death, the record shows no express agreement. The only document explicitly dealing with that subject is a 2005 letter from Croland to Ronis (Pl. Ex. 18):

> If something happens to you—and I hope you are playing tennis in your 100th year—there is nothing to show my real interest in Carmine's and Virgil's. I trust Ellen will honor our agreements, but I really would like something specific so that there is never an issue. What can be done—Life insurance? I hate it.

The record does not show any response by Ronis.

What has been described thus far is evidence in the record showing the nature of the agreement between Ronis and Croland. There is, of course, the issue before the court as to whether that agreement entitles Croland to a share of what the Ronis estate receives from the companies.

In addition, there is a dispute about whether Ronis paid Croland during Ronis' lifetime. Emails document Croland's repeated complaints regarding Ronis' supposed failure to pay various sums. The record, however, does not contain evidence that firmly fixes the extent of either type of underpayment. Instead, the record contains fragmentary emails and incomplete bookkeeping. These at most establish that Croland frequently complained about underpayments and that Ronis acknowledged that some underpayments had occurred.

When it became apparent that plaintiff would not share the proceeds from the redemption of Ronis' shares with him, Croland filed a claim against the estate in the Probate Court of Stamford, Connecticut, and thereafter sued in Stamford Superior Court in 2010. Croland also sued plaintiff in this court in

2011. Following his successful motion to intervene in the present action, Croland dismissed his federal lawsuit and his state action in Superior Court. Croland then filed the complaint in intervention that is the subject of the instant motions.

### Croland's Allegations

Based upon this record, Croland contends that he and Ronis had a partnership. Croland does not contend that he was a partner in the ownership of any of the companies. In fact, the companies were not partnerships at all. The owners were stockholders. Rather, Croland contends that he was a partner with Ronis is connection with the distributions made by the companies to Ronis. The contention is that Croland possessed a partnership share in these distributions. He contends that this partnership existed while Ronis held shares in the companies; that this entitlement pertained to any distributions upon the sale of the companies; and, most importantly for present purposes, that the partnership entitlement reaches the proceeds to the Ronis estate from the redemption of Ronis' shares.

The complaint contains six causes of action. First, it seeks an accounting based upon an alleged partnership between Ronis and Croland. Second, it alleges that Ronis and his estate breached a fiduciary duty to Croland by failing to pay him the proper amount of distributions. Third, it alleges that Ronis committed fraud by falsely promising to treat Croland as a partner. Fourth, it alleges that a constructive trust should be imposed on the funds held by Ronis and properly payable to Croland. Fifth, it alleges that a

8

constructive trust should be imposed on the funds held by the corporate defendants and properly payable to Croland. Sixth, it alleges that the corporate defendants should indemnify Croland.

## The Present Motions

Plaintiff has moved for summary judgment and judgment on the pleadings as to all the counts in Croland's complaint. Plaintiff argues that Croland has introduced no evidence to establish a partnership between Croland and Ronis beyond a self-serving affidavit that is barred by New York's Dead Man statute, N.Y. CPLR § 4519. Plaintiff further argues that Croland's fraud claim should be dismissed because it states, at most, a breach of contract claim, and that the constructive trust claim should be dismissed due to the lack of a confidential or fiduciary relationship between the parties.

Croland cross-moves on the ground that the evidence on the record establishes that he is entitled to the following sums (Croland Mem. in Supp. p. 27):

1. 12.50% of all non-W-2 monies paid to Ronis during his lifetime by Little Fish, and 12.50% of all monies to be paid by Little Fish to buy-back and/or redeem Ronis' shares.

2. 11.07% of all non-W-2 monies paid to Ronis by Times Square Barbeque during his lifetime, and 11.07% of all monies paid by Times Square Barbeque to buy-back and/or redeem Ronis' shares.

3. 12.77% of all non-W-2 monies paid to Ronis by Carmine's Atlantic City during his lifetime, and 12.77% of all monies paid by Carmine's Atlantic

City to buy-back or redeem Ronis' shares.

In the alternative, Croland moves for leave to file an amended complaint to assert a claim for breach of contract, wherein he seeks specific performance. Croland's present complaint is largely based on the partnership theory. It contains no cause of action for breach of contract.

## Discussion

I)    Plaintiff's Motion for Summary Judgment and Judgment on the Pleadings; Croland's Cross-Motion for Summary Judgment

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant has the burden of showing that no genuine factual dispute exists. Id. However, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. Id. at 249. "When both sides have moved for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration."Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011).

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a

claim. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679-680 (2009). In deciding such a motion, a court must accept as true the facts alleged in the complaint, but it should not assume the truth of legal conclusions. Iqbal, 556 U.S. at 679. A court must also draw all reasonable inferences in the plaintiff's favor, and it may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

a)  First Cause of Action: Accounting

The cause of action for an accounting necessarily presupposes a partnership. See Scholastic, Inc. v. Harris, 259 F.3d 73, 90-91 (2d Cir. 2001). A partnership is "an association of two or more persons to carry on as co-owners a business for profit." Martin v. Peyton, 158 N.E. 77, 78 (N.Y. 1927). "Partnership results from contract, express or implied." Martin, 158 N.E. at 78. A contract to form a partnership can be written or oral. See Missan v. Schoenfeld, 465 N.Y.S.2d 706, 712 (N.Y. App. Div. 1983). But even when no explicit agreement sets forth the terms of a partnership, a partnership may be implied "from the conduct, intention, and relationship between the parties." Brodsky v. Stadlen, 526 N.Y.S.2d 478, 479 (N.Y. App. Div. 1988). "Among the factors to be considered in determining whether a partnership was created are

the intent of the parties (express or implied), whether there was joint control and management of the business, whether there was a sharing of the profits as well as a sharing of the losses, and whether there was a combination of property, skill or knowledge." Kellogg v. Kellogg, 585 N.Y.S.2d 824, 825 (N.Y. App. Div. 3d Dep't 1992) (internal quotations omitted). Certain of these factors are more important than others; indeed, an "indispensable essential of a contract of partnership or joint venture, both under common law and statutory law, is a mutual promise or undertaking of the parties to share in the profits of the business *and submit to the burden of making good the losses.*" Steinbeck v. Gerosa, 175 N.Y.S.2d 1, 13 (N.Y. 1958) (emphasis in original).  Whether or not a partnership exists is ultimately a question of fact. Palmentola v Morrell, 251 N.Y.S.2d 479, 480 (N.Y. App. Div. 1964).

Croland and Ronis never entered into an explicit partnership agreement. The question, then, is whether the written evidence on the record establishes an implied partnership between them.[2] The court holds that it does not.

As stated earlier, Croland does not contend that he was a partner with Ronis in the ownership of any of the companies. The companies were not partnerships, but were owned by stockholders. A careful reading of the complaint shows that Croland contends he was a partner with Ronis in connection with the distributions made by the companies to Ronis. Can this be

---

[2] The parties have discussed at length the purported significance of New York's Dead Man Statute, N.Y.C.P.L.R. 4519, to the present motion. But that statute only applies when a party sues a decedent's estate and seeks to establish a transaction with a decedent by introducing statements supposedly made by the decedent. The statute does not apply to written documents evidencing a personal transaction with a decedent. See Acevedo v. Audubon Mgmt., Inc., 721 N.Y.S.2d 332, 335 (N.Y. App. Div. 2001).

considered to be a partnership under applicable partnership law? Certainly, the arrangement involved Ronis sharing with Croland the distributions from the companies paid to Ronis. One attribute of partnerships is the sharing of profits from a business. However, the court has not been shown any evidence that Ronis or Croland actually called their relationship a partnership. Also, the substance of the relationship was limited to the agreement by Ronis to pay money to Croland. But Croland really had no ownership rights in a business, or even in the money until he was paid that money. The court believes that what existed was a contract that obligated Ronis to make payments to Croland. Since no partnership existed between Croland and Ronis, plaintiff is entitled to summary judgment on Croland's first cause of action.

b)  Second Cause of Action: Breach of Fiduciary Duty

The parties neglected to fully brief the second cause of action, but the court's prior holding necessarily entails that plaintiff is entitled to summary judgment on this claim as well.[3]

To establish a claim for breach of fiduciary duty, Croland must prove "(1) the existence of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's misconduct." Sokol Holdings, Inc. v. BMB Munai, Inc., 726 F. Supp. 2d 291, 305-06 (S.D.N.Y. 2010). "A fiduciary relationship exists under New York law when one [person] is under a duty to

---

[3] Plaintiff moved for summary judgment and judgment on the pleadings as to all claims in the complaint in intervention, and the briefs touched on issues dispositive of the second cause of action, so it is appropriate for the court to grant summary judgment despite the lamentable lack of briefing.

act for or to give advice for the benefit of another upon matters within the scope of the relation." <u>Flickinger v. Harold C. Brown & Co.</u>, 947 F.2d 595, 599 (2d Cir. 1991). But when "parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." <u>In re Mid-Island Hosp., Inc.</u>, 276 F.3d 123, 130 (2d Cir. 2002) (internal quotation omitted).

The court has already held that no partnership existed between Ronis and Croland. In all respects, the transaction between them resembled an ordinary commercial transaction to the mutual benefit of the two parties involved. Their arrangement did not give rise to a fiduciary relationship on the part on either party, so Croland's cause of action for breach of fiduciary duty necessarily fails. Thus plaintiff is entitled summary judgment on this claim. [4]

c)  Third Cause of Action: Fraud

The third cause of action for fraud fails, because the conduct underlying that claim only supports a breach of contract claim.

To establish a claim for fraud, Croland must prove: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the [the party bringing suit], (5) that causes damage to the [that party]." <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 119 F.3d 91, 98 (2d Cir. 1997). But under

_____

[4] To the extent that the court's holdings regarding this cause of action and those discussed *infra* make use of the court's finding from the record that no partnership between Croland and Ronis existed as a matter of law, these causes of action are best adjudicated on summary judgment, not via a motion for judgment on the pleadings.

New York law, a fraud claim cannot derive wholly from a counter-party's false statement of an intent to perform under a contract. See Papa's-June Music v. McLean, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996). Rather, to "say that a contracting party intends when he enters into an agreement not to be bound by it is not to state 'fraud' in an actionable area, but to state a willingness to risk paying damages for breach of contract." Briefstein v. P.J. Rotondo Constr. Co., 187 N.Y.S.2d 866, 868 (N.Y. App. Div. 1st Dep't 1959). This doctrine applies regardless of whether such a statement is uttered before or after the contract has been formed. See Metro. Transp. Auth. v. Triumph Adver. Prod., Inc., 497 N.Y.S.2d 673, 675 (N.Y. App. Div. 1st Dep't 1986).

But "it does not follow that because acts constitute a breach of contract they cannot also give rise to liability in tort." Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir. 1980).  To sustain his fraud claim, Croland must 1) allege a fraud concerning a "legal duty separate from the duty to perform under the contract," 2) allege a fraud concerning "a misrepresentation collateral or extraneous to the contract," or 3) seek "special damages that are caused by the misrepresentation and unrecoverable as contract damages...." Bridgestone/Firestone v. Recovery Credit Servs., 98 F.3d 13, 20 (2d Cir. 1996).

Here, the complaint in intervention outright declares that the fraud claim concerns a false promise to perform under a contract (Cplt. in Interv. ¶ 40): "In order to obtain the initial funding, and then, continued funding from Croland, Ronis continually represented that he would treat Croland fairly as a partner and distribute the proceeds of their partnership arrangement to Croland in

proper amounts on a timely basis." The record, too, establishes that Croland and Ronis engaged in an unadorned business transaction. Croland argues that the fraud claim concerns a legal duty separate from the duty to perform under the contract—the fiduciary duty between partners—but this argument fails by virtue of the court's holding that no partnership existed between the two men as a matter of law.

Thus, plaintiff is granted summary judgment on the third cause of action.

d)  Fourth, Fifth, and Sixth Causes of Action

Croland claim against the plaintiff for a constructive trust fails, and his claims against the corporate defendants fail because they are necessarily predicated on the claims against Ronis.

"A constructive trust is an equitable remedy...and its purpose is to prevent unjust enrichment...." Marini v Lombardo, 912 N.Y.S.2d 693, 696 (N.Y. App. Div. 2010). To impose a constructive trust, "four factors must be established: (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment...." Id. "However, as these elements serve only as a guideline, a constructive trust may still be imposed even if all of the elements are not established." Id. But since a constructive trust is an equitable remedy, it "should not be imposed unless it is demonstrated that a legal remedy is inadequate." Bertoni v. Catucci, 498 N.Y.S.2d 902, 905 (N.Y. App. Div. 1986).

Croland has not established the existence of a fiduciary relationship

16

between himself and Ronis, and legal remedy of damages in a breach of contract action would clearly be adequate in this case. Croland's claims for a constructive trust are thus doubly faulty, so plaintiff is entitled to summary judgment on the fourth cause of action, and the corporate defendants' are entitled to summary judgment on the fifth and sixth causes of action.

In summary, the court awards summary judgment to plaintiff on the first four counts of the complaint in intervention, and it awards summary judgment to the corporate defendants on the fifth and sixth causes of action.[5] The court now turns to Croland's motion for leave to amend the complaint.

II)     Croland's Motion for Leave to Amend

Croland moves to amend his complaint to allege a cause of action for breach of contract and to seek specific performance.

Under Fed. R. Civ. P. 15(a)(2), the court should freely grant a party leave to amend a pleading prior to trial when justice so requires.  Pursuant to this liberal standard, "[l]eave to amend should be denied only if there is a good reason such as undue delay, bad faith or dilatory motive on the part of the movant, a futile claim, or undue prejudice to the opposing party." Woodard v. N.Y. Health & Hosps. Corp., 554 F. Supp. 2d 329, 350 (E.D.N.Y. 2008).

---

[5] No causes of action remain in the original complaint, so the court has no occasion to formally opine on the availability of punitive damages in this case. It bears mention, however, that had any count of the original complaint remained standing, the court would not have hesitated to disallow punitive damages in this case. "Punitive damages are permitted when the defendant's wrongdoing is not simply intentional but evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations." Ross v. Louise Wise Servs., Inc., 836 N.Y.S.2d 509, 516 (N.Y. 2007) (internal quotations and formatting omitted). This case presents a garden-variety commercial dispute. There is no evidence whatsoever that Ronis engaged in the sort of conduct that would justify the imposition of punitive damages.

Plaintiff argues that Croland's motion should be denied, because his new claim is futile and fails for the same reasons that his original claims fail. Plaintiff also argues that the new claim fails under the Statute of Frauds and that the equitable remedy of specific performance is unnecessary in this case.

The court disagrees. There is sufficient written evidence to establish a contracts between Croland and Ronis, whereby Croland was to receive a portion of the distributions received by Ronis. Whether that contract went so far as to give Croland a right to part of the distributions after Ronis' death is the issue.

Plaintiff argues, however, that pleading such a claim would be futile, because the contract would be barred by two distinct writing requirements under the Statute of Frauds. The LF and TSB transactions—which occurred in 1992 and 1993, respectively—are supposedly barred by U.C.C. § 8-319, which was repealed in 1997. That statute provided that "[a] contract for the sale of securities is not enforceable...unless (a) there is some writing signed by the party against whom enforcement is sought." Id. But this was not a contract for the sale of securities.

Plaintiff next asserts that the contract claim is barred by N.Y. Gen. Oblig. Law § 5-701(a)(1), which provides that an agreement that "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime" cannot be enforced in the absence of a writing signed by the party against whom enforcement is sought. But under familiar law, the kind of a contract presented here is

18

deemed performable within the prescribed time limits.

Thus the court grants Croland leave to amend his complaint to add a breach of contract claim.

The court will not, however, allow Croland to file the proposed amended complaint attached to his notice to amend. The new first cause of action in the proposed amended complaint is substantially identical to portions of Croland's memorandum of law in support of his motion for summary judgment. Indeed, the proposed amended complaint even references exhibits as they are indentified in the Croland affidavit. As currently formulated, the proposed amended complaint is confusing and vastly over-long, rather than "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, there is no need whatsoever for equitable relief in this case. Croland can clearly be made whole with an award of damages.

Thus, the court grants Croland leave to file a concise amended complaint introducing a breach of contract claim for damages that is consistent with the written record. Plaintiff, of course, remains free to assert any colorable defense against this claim.

III)    Plaintiff's Motion for Costs and Fees

Plaintiff sent Croland 18 requests for admissions pursuant to Fed R. Civ. P. 36. She now seeks costs arising from the effort to prove the truth of the following requests denied by Croland:

> 14. Croland has nothing in writing signed by Ronis promising to make him a partner or treat him as a partner.

15. Croland has nothing in writing signed by Ronis giving Croland any interest in the shares in Little Fish or Times Square or in Ronis' membership interest in Atlantic City.

16. Croland has nothing in writing signed by Ronis giving Croland any interest in the proceeds of the sale of Ronis' stock in Little Fish or Time Square or of the sale of Ronis' membership interest in Atlantic City.

17. The distributions alleged by Croland came from Creative Foods, not Ronis personally.

Plaintiff Ex. 2.

Fed. R. Civ. P. 37(c)(2) provides that if a party "fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof." Indeed, the court must award these costs unless "(A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit." Id.

While Croland lacks a comprehensive written contract to substantiate his claims against plaintiff, requests 14-16 concern written statements more generally. As the briefing on the present motions makes clear, Croland believes that the voluminous emails he exchanged with Ronis establish his entitlement to the various interests mentioned in those requests. The present opinion disagrees to a substantial extent, but it cannot be said that Croland had no reasonable ground to believe he would succeed, given the ambiguous wording

20

of some of Ronis' emails. As for request 17, Croland appears to have denied on the ground that Kreative was the alter ego of Ronis, such that any distribution from Kreative would necessarily be from Ronis personally. The email record—particularly Ronis' email dated January 31, 2006—provides a reasonable basis for this contention.

Thus plaintiff's motion for costs and fees is denied.

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and intervenor Croland's cross-motion for summary judgment is denied. Plaintiff's motion for costs is denied, and Croland's motion for leave to amend is granted. This opinion resolves docket items numbers 81, 89, and 105.

Dated:  New York, New York
        September 7, 2012

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/7/12___